# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ISIAH JOHNSON, #R73381,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   3:24-cv-01280-SMY-RJD |
| | ) |
| **ANTHONY D. WILLS,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## ORDER

**DALY, Magistrate Judge:**

This matter is before the Court on Plaintiff Isaiah Johnson's Motion for Authorizing the Issuance of Subpoenas (Doc. 68) and Defendant Wexford Health Sources ("Wexford")'s Motion for Protective Order (Doc. 71).[1]  Plaintiff, an inmate in the custody of the Illinois Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations at Menard Correctional Center.  Following preliminary review of the First Amended Complaint, Plaintiff was allowed to proceed on the following claims against Defendants Anthony Wills, Nurse Crain, Nurse Crane, C. Morris, and Wexford:

- Count 1: Eighth Amendment claim against Defendants for discontinuing Plaintiff's psychotropic medication without warning and refusing to reinstate it beginning October 2023.

- Count 2: Eighth Amendment claim against Defendants for denying Plaintiff mental health treatment at Menard beginning October 2023.

- Count 3: Eighth Amendment claim against Defendants for denying Plaintiff adequate medical care, including surgery and pain medication, for two hernias at Menard from October 2023 through January 2024.

---

[1] Both motions were referred by District Judge Yandle, pursuant to the Federal Magistrate Act (as amended), 28 U.S.C. §636(b)(1)(A). (Docs. 69 & 73).

(Doc. 34). Thereafter, Plaintiff voluntarily dismissed Defendants Crane and Crain pursuant to Rule 41(a). (Doc. 67).

On May 8, 2025, Plaintiff filed his Motion for Authorizing the Issuance of Subpoenas (Doc. 68). Plaintiff asked the Court to compel Defendant Wills to produce emails, correspondence letters, memoranda, and bulletins from October 1, 2023, through January 1, 2025, relating to this case. (*Id.*). Wills filed a response objecting to Plaintiff's motion on several grounds. (Doc. 72) Plaintiff further asked the Court to issue a subpoena to Wexford for the contract(s) and agreement(s) between Wexford and IDOC, as well as the issuance of subpoenas to IDOC, a non-party. (Doc. 68). On May 22, 2025, Defendant Wexford filed a response (Doc. 70) and a Motion for Protective Order (Doc. 71). Wexford stated that it will produce the contract between Wexford and IDOC, but it wants the contract to be produced pursuant to a protective order. Wexford's proposed protective order provides that Plaintiff cannot keep the contract; he will only be able to view it under the supervision of "a person working at Menard," who will arrange for a time and place for Plaintiff to review the contract. Per the undersigned's order, Wexford filed a Supplemental Memorandum in Support of Motion for Protective Order, addressing why the proposed protective measures to keep the Wexford – IDOC contract confidential are necessary, and to clarify whether the protective order sought would apply only to the contract or other documents as well. (Docs. 76 & 80). Wills also filed a response to Wexford's Motion for Protective Order, addressing whether the procedures outlined in Wexford's proposed protective order could be performed without disrupting prison operations. (Doc. 78).

For the reasons set forth below, Plaintiff's Motion for Authorizing the Issuance of Subpoenas (Doc. 68) is **GRANTED in part and DENIED in part**. Defendant Wexford Health Sources Inc.'s Motion for Protective Order (Doc. 71) is **DENIED without prejudice**.

## Discussion

The Court will first address Plaintiff's requests pertaining to Wexford and IDOC and then turn to his requests to Wills.

1. **Documents Requested from Wexford**

Plaintiff first asks the Court to facilitate the issuance of Subpoenas against Wexford for the following: (a) Any contract and agreements between Wexford and the IDOC; (b) Identification of all medical and mental health staff that Defendant had employed at Menard from January 1, 2023, through January 1, 2025, to determine whether the facility was properly staffed within the guidelines of the contracts with the IDOC; and (c) Emails, text messages, and memorand[a] in relation to the Plaintiff from January 2021 through January 2025 to review for "cover-ups" and delays in treatment. (Doc. 68, p. 2).

The Court first clarifies that the issuance of a subpoena is not necessary for Plaintiff to obtain the requested documents and information. Plaintiff can obtain discovery from Wexford, a party in this case, through interrogatories and requests for production of documents, and if a dispute arises, through a motion to compel the same. Fed. R. Civ. P. 33, 34 & 37; *see also* Scheduling and Discovery Order (Doc. 57). Plaintiff, however, attaches to his motion Wexford's Responses to Plaintiffs' Request to Produce (Doc. 68, pp. 4-5), which encompass requests to produce documents included in the Plaintiff's motion. Accordingly, the Court construes this part of Plaintiff's motion as a Motion to Compel pursuant to Federal Rule of Civil Procedure 37. Fed. R. Civ. P. 37.

With respect to any contracts and agreements between Wexford and IDOC, those documents appear to be subject to Plaintiff's Request for Production of Documents No. 1. Therein, Plaintiff requests from Wexford "all documents in relation to [IDOC] policies,

procedures, contacts, memos, bulletins, etc. from January 2016-January 2025." (Doc. 68, p. 4), Defendant Wexford represented in its response that it intends to produce the contract that Plaintiff seeks, as it is relevant to the underlying lawsuit. (Doc. 70, p. 2) However, Wexford requested that production be subject to a protective order. (*Id.*). Wexford's proposed protective order provides that Plaintiff cannot keep the contract; he will only be able to view it under the supervision of "a person working at Menard," who will arrange for a time and place for Plaintiff to review it.[2] (Doc. 71)

Rule 26(c) allows the Court to enter a protective order regarding discovery, for good cause, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). The Court may impose limitations, as necessary, to prevent the extra-judicial use of confidential and proprietary information. *Dinkins v. Bunge Milling, Inc.*, 313 F.App'x 882, 884 (7th Cir. 2009). In its supplemental brief, Wexford clarified that the protective order would apply only to its contractual agreement with the IDOC. (Doc. 80, p. 2). It further provided two bases for the need for a protective order as to that agreement. First, Wexford argues that the contract at issue contains contractual terms that would disclose the methodology used by the IDOC and Wexford to calculate payments for services under the contract. (Doc. 80, p. 3). If this information is disclosed, Wexford argues, its competitors could use that information to undercut Wexford in an extremely competitive market. (*Id.*). Wexford clarified, however, that it specifically seeks to protect the Schedule E portion of the contract, which sets forth the amount of money the IDOC will pay Wexford for each position filled at a specific correctional center. (*Id.*). The Court agrees with Wexford that Schedule E appears to contain commercial or financial information that would cause competitive harm if disclosed to its

---

[2] Wexford's proposed protective order was not filed with the record and was submitted to the undersigned for review through the Chambers' email.

competitors. However, the Court finds that protection of Wexford's interests can sufficiently be achieved by redacting the relevant proprietary information from the copy of the contract to be produced to Plaintiff.

Next, Wexford argues that the terms of the contract between Wexford and the IDOC are subject to misinterpretation and disclosure to inmates other than Plaintiff, which would burden Wexford through baseless litigation if the contract were to be produced to Plaintiff without the requested protective order. (Doc. 80, pp. 2-3). Regarding setting a strict time limit on the length of time Plaintiff may view the contract, Wexford argues that it would force Plaintiff to only take notes of the relevant portions of the contract and prevent him from copying the entire contract and disseminating it to other inmates. (Doc. 80, p. 3). Defendant Wills, however, clarified that while individuals in custody at Menard Correctional Center ("Menard") have, in the past, been able to review documents, without keeping them, for a limited period of time, allowing an individual in custody to review documents only on a strict time frame that Menard staff must enforce cannot be performed without disrupting prison operations. (Doc. 78, pp. 1-2).

Taking everything into consideration, the Court finds that Wexford's proposed protective order is not narrowly drafted and is overly burdensome for the Plaintiff and the IDOC. First, Plaintiff cannot reasonably be expected to review, comprehend, and take appropriate hand-written notes of the relevant portions of the Wexford-IDOC contract within the two-hour supervised limit set in the proposed protective order. Furthermore, as the Court noted in its prior Order, the Wexford-IDOC contract is presumably a public document that can be obtained upon request pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1 *et seq*. While the Illinois Freedom of Information Act exempts from production commercial or financial information that would cause competitive harm, Wexford's financial interest can be protected by redacting the

relevant portions of the agreement. Further, Wexford's concerns regarding third-party inmates obtaining access to the agreement and exposing Wexford to further litigation could be addressed by less restrictive means. For instance, a protective order could specifically prohibit Plaintiff from showing, providing copies of, or otherwise disseminating these documents in any manner to any person, subject to the very limited exceptions currently provided under the relevant provision of Wexford's proposed protective order. The amended proposed protective order may explicitly state that Plaintiff's failure to comply with its terms may subject him to sanctions.

Accordingly, Wexford's Motion for Protective Order is **DENIED without prejudice**. Wexford may renew its Motion for Protective Order and submit an amended proposed protective order that complies with this Court's Order **by July 31, 2025**. Unless Wexford timely renews its motion for a protective order by that day, it shall produce a copy of the Wexford-IDOC agreement, with any necessary redactions regarding Schedule E, **by August 21, 2025**.

Next, Plaintiff asks Wexford to identify "all medical and mental health staff that Defendant had employed at Menard from January 1, 2023, through January 1, 2025." (Doc. 68, p. 2). He states that this information is necessary to determine whether the facility was properly staffed within the guidelines of the contracts with the IDOC. In its response, Wexford objects to the production of these documents, arguing that they are not relevant to the issue of whether Plaintiff's medical needs were not adequately treated due to understaffing. (Doc. 70, p. 3). Wexford cites *Reck v. Wexford Health Sources, Inc.*, for the proposition that staffing vacancies alone do not amount to deliberate indifference. (Doc. 70 at 3 (citing 27 F.4th 473, 489-90 (7th Cir. 2022)). It further argues that the best evidence to establish Plaintiff's claims is his medical record.

The Court is not convinced. Under Federal Rule of Civil Procedure 26(b), the scope of discovery extends to "any nonprivileged matter [that] is relevant to any party's claim or defense

and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  Notably, discovery is not limited to admissible evidence, let alone to the most probative evidence, as Wexford argues.  In the First Amended Complaint, Plaintiff alleges that Wexford had a policy, custom, or widespread practice of denying inmate medical care and mental health treatment through the use of understaffing at Menard, which caused Plaintiff to lose access to necessary psychotropic medication (Ritalin), pain medication (Remeron), mental health treatment, and medical care for his hernia.  (Doc. 34, p. 2).  While it is true that understaffing on its own is insufficient to establish deliberate indifference, it is still relevant in establishing Plaintiff's allegations.

The Court notes, however, that Plaintiff's request should have been brought in the form of interrogatories propounded to Wexford.  There is no indication that Plaintiff has served Wexford with any interrogatories.  Plaintiff attached to his motion his requests for production propounded to Wexford, wherein he asks for "documents that pertain to staffing . . . by Defendants Wexford Health Sources and Jilian Crane."  (Doc. 68, p. 4).  However, as Wexford notes in its response, this request is overbroad in scope and vague, as it does not describe with specificity the documents sought and is not limited to the timeframe relevant to this action.  Accordingly, the Court at this time will not direct Wexford to identify "all medical and mental health staff that Defendant had employed at Menard from January 1, 2023, through January 1, 2025."  Plaintiff may seek this information through interrogatories propounded directly to Wexford.  *See* Fed. R. Civ. P. 33

Plaintiff further asks Wexford to produce emails, text messages, and memoranda in relation to the Plaintiff from January 2021 through January 2025 to review for "cover-ups" and delays in treatment.  (Doc. 68, p. 2).  Wexford responded that Plaintiff's medical records were obtained via subpoena from Menard and were produced to Plaintiff on October 3, 2024.  The requested information is partially duplicative of Plaintiff's Requests for Production Nos. 3 & 4.  In Request

for Production No. 3, Plaintiff asked Wexford for all emails, memos, bulletins, text messages, etc. that pertain to the Plaintiff from January 2023-January 2025." (Doc. 68 at 5). Wexford originally responded that it did not possess any responsive documents (subject to several objections raised therein). (*Id.*). In Request for Production No. 4, Plaintiff asked Wexford for all electronically stored information pertaining to the Plaintiff and Menard Correctional Center health care unit date from January 1, 2023-January 2025." (*Id.*). Wexford originally responded with reference to documents previously produced, subject to certain objections raised in its response. (*Id.*).

In its response to Plaintiff's pending motion, Wexford represents that on May 20, 2025, it mailed supplemental documents to Plaintiff containing a document responsive to Plaintiff's third and fourth requests for production. (Doc. 70, p. 2). Wexford did not attach those documents to its response, and therefore, the Court is unable to determine whether the supplemental production satisfied Plaintiff's requests. At the same time, Plaintiff did not file a reply disputing Wexford's contention. Accordingly, the Court assumes that Wexford's May 20, 2025, supplemental responses to Plaintiff's Requests for Production of Documents resolved the dispute pertaining to any emails, text messages, and memoranda in relation to the Plaintiff from January 2021 through January 2025. If, however, Plaintiff deems that Wexford's responses are still incomplete, he may bring a new motion to compel production of documents pursuant to Rule 37.

2. **Documents Request from Defendant Wills**

Plaintiff requests from Defendant Wills, the Menard Chief Administrative Officer, all "Emails from October 1, 2023, through January 1, 2025, . . . in relation to Plaintiff and his current action" as well as "[c]orrespondence letters, memorand[a], and bulletins from October 1, 2023, through January 1, 2025, in relation to Plaintiff." (Doc. 68, p. 2). In his response, Wills explains

that he was never served with any subpoena from the Plaintiff. He attaches, however, to his motion Plaintiff's requests for production of documents propounded to Wills. (Doc. 72-1, pp. 2-3). Plaintiff's requested documents overlap with Requests for Production Nos. 3 & 4. (*Id.*). The Court again construes Plaintiff's motion as to Defendant Wills as a motion to compel production of documents under Rule 37.

> Defendant Wills objected to those requests and responded as follows:
>
> Defendants object to this request as overbroad and burdensome, irrelevant, immaterial and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In requesting "all emails, memos, bulletins, text messages, etc., pertaining to the Plaintiff", this request seeks information that does not pertain to Plaintiff's claims that he was denied medication and care. Moreover, Plaintiff's amended complaint alleges a timeframe from October 2023 to May 2024, and this request seeks information well beyond that timeframe. Subject to and without waiving said objection, Defendants refer Plaintiff to an email from Delores Mays dated July 31, 2024, and its attachment, attached hereto as Bates 001339-001345.

The Court finds that the scope of Requests for Production Nos. 3 and 4, as limited in Plaintiff's motion, is proper. Plaintiff only asks for emails, correspondence letters, memoranda, and bulletins that are relevant to Plaintiff and this action. While Plaintiff's amended complaint alleges a timeframe from October 2023 to May 2024, Plaintiff's request for information through January 1, 2025, an additional eight months from the filing of the Complaint, is not overbroad and burdensome. Such information may be relevant to certain elements of Plaintiff's claim, such as establishing damages.

Accordingly, Defendant Wills is **ORDERED** to produce to Plaintiff any "emails from October 1, 2023, through January 1, 2025, . . . in relation to Plaintiff and his current action" as well as "[c]orrespondence letters, memorand[a], and bulletins from October 1, 2023, through January 1, 2025," in relation to Plaintiff and this action by **August 21, 2025.**

### 3. **Subpoenas to IDOC**

In his motion, Plaintiff further asks the Court to authorize the issuance of subpoenas to IDOC for three categories of documents. Rule 45(c)(2) of the Federal Rules of Civil Procedure provides that "[a] subpoena may command: (A) A production of documents, electronically stored information, or tangible things at a place where the person resides, is employed, or regularly transacts business in person; and (B) inspection of premises at the premises to be inspected." Fed. R. Civ. Pro. 45(c)(2). The Clerk must issue subpoenas on request of a party. Fed. R. Civ. P. 45(a)(3). However, under Local Rule 45.1, issuance of subpoenas to a *pro se* party must be first authorized by the Court, after evaluating whether the documents subject to the proposed subpoena are relevant to the claims or defenses at issue. SDIL-LR 45.1(a)-(b). "A *pro se* party must pay all applicable fees associated with the subpoena, even if the *pro se* party has been granted leave to proceed *in forma pauperis*." SDIL-LR 45.1(a)-(b) (citing 28 U.S.C. § 1915(d)).

First, Plaintiff asks to subpoena the IDOC to produce "[a]ll contracts and agreements with Defendant Wexford dated from July 2016 through January 2025." (Doc. 68, p. 2). Defendant Wills, who is an IDOC employee, responded that the issuance of a subpoena is not required as to those documents, as he has access to them. (Doc. 78, p. 2). However, this request overlaps with Plaintiff's request to Wexford for production of "any contract and agreements between Wexford and the IDOC." In light of Wexford's request for a protective order as to that agreement, the Court will not order Wills to produce the Wexford – IDOC agreement at this time.

Next, Plaintiff asks to subpoena the IDOC to produce his medical history. Per the Initial Scheduling and Discovery Order entered in this case, Defendants were ordered to produce copies of Plaintiff's relevant medical records, provided that Plaintiff had executed the required release form. (Doc. 49, p.2). Wexford stated in its response to Plaintiff's motion that Plaintiff's medical

records were obtained via subpoena from Menard and were produced to Plaintiff on October 3, 2024. (Doc. 70, p. 2). Plaintiff does not explain in his motion whether there are specific medical records that the Defendants have failed to produce thus far. Further, Plaintiff's request is overbroad in that he asks for his medical history without limiting his request to the records in IDOC's possession or control that are relevant to this case. Accordingly, Plaintiff's request to subpoena IDOC for his medical history is **DENIED without prejudice**. Plaintiff may renew his motion setting forth with specificity any portions of his medical records which he might claim Defendants have failed to produce and their relevance to this case.

Finally, Plaintiff asks to subpoena from the IDOC "[a]ll correspondence letters from Plaintiff to Mental Health Officials from October 2023 through January 1, 2025." (Doc. 68, p. 3). Plaintiff states that those documents are essential to establish that Defendants were deliberately indifferent to his serious medical needs. The Court finds this information relevant and sufficiently limited in scope. Accordingly, Plaintiff's request to subpoena from IDOC "[a]ll correspondence letters from Plaintiff to Mental Health Officials from October 2023 through January 1, 2025," is **GRANTED**. In the interest of efficiency, the Court has completed the appropriate form using the information provided by Plaintiff. The Clerk of Court is **DIRECTED** to sign the attached subpoena and send it back to Plaintiff. Plaintiff is **ADVISED** to review Rule 45 of the Federal Rules of Civil Procedure and that he is responsible for service of the subpoena and paying the associated costs. Certified mail through the United States Post Office is sufficient to meet the service requirements. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012).

## Conclusion

For the reasons set forth above, Plaintiff's Motion for Authorizing the Issuance of Subpoenas (Doc. 68) is **GRANTED in part and DENIED in part**. Defendant Wexford Health

Sources Inc.'s Motion for Protective Order (Doc. 71) is **DENIED without prejudice.** Wexford may renew its Motion for Protective Order and submit a proposed protective order that complies with this Court's Order **by July 31, 2025**. Unless Wexford timely renews its motion for protective order by that deadline, it shall produce a copy of the Wexford-IDOC agreement to Plaintiff, with any necessary redactions as to Schedule E, by **August 21, 2025**.

Defendant Wills is **ORDERED** to produce to Plaintiff any "emails from October 1, 2023, through January 1, 2025, . . . in relation to Plaintiff and his current action" as well as "[c]orrespondence letters, memorand[a], and bulletins from October 1, 2023, through January 1, 2025," in relation to Plaintiff and this action by **August 21, 2025.**

The Clerk of Court is **DIRECTED** to sign the attached subpoena and send it back to Plaintiff. Plaintiff is **ADVISED** to review Rule 45 of the Federal Rules of Civil Procedure and that he is responsible for service of the subpoena and paying the associated costs. Certified mail through the United States Post Office is sufficient to meet the service requirements. *See Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012).

**IT IS SO ORDERED.**

**DATED: July 21, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**